## ELLA WILSON v. STATE.

No. A-8133. Jan. 9, 1932.
Rehearing Denied Oct. 21, 1932.
(15 Pac. [2d] 1043.)

Meacham, Meacham & Meacham, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and Raymond Sroaf, Co. Atty., (Darnell & La Rue, of counsel), for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Custer county of manslaughter in the first degree and was sentenced to serve a term of 10 years in the state penitentiary.

On July 31, 1929, defendant resided at Custer City with her two children, and another woman roomed at the place. She had been separated from her husband for some weeks, and on this date her husband, about 11:00

o'clock at night, came to the home of his brother, some two blocks from where defendant resided, accompanied by a young woman and another man. They were in the home of the brother with a car driven by the husband parked near. Defendant went to the place, took the car, and drove it to her home and parked it. Soon those at the brother's home discovered the car was missing, and, while in front of the house discussing it, a number of shots were fired from the vicinity of defendant's home, some of them passing through the trees near them. Albert Graves, a deputy sheriff, was called, notified of the missing car and of the fact of the shooting. He drove to the front of defendant's home, stopped his car, turned out the lights, and stepped up to the gate and a shooting followed in which defendant fired three shots from inside the screen porch with a target rifle, one of which mortally wounded Graves and from the effect of which he died in about 30 minutes. Graves fired four shots from an automatic pistol. The testimony for the state tends to show that defendant opened fire as Graves was about to enter the yard, as the shells from the automatic pistol were all found outside the yard and he fell two or three steps outside the gate. No dying statement was made. Defendant testified she was at a picture show on the night of the tragedy and soon after she returned she saw a car pass which she believed was driven by her husband; that she then went to the residence of the brother of her husband, looked inside, saw her husband and the other parties, including a young woman, with whom she believed her husband was keeping company. That she saw the car sitting at the house and she considered she owned it and took it and drove it to her home and parked it near the sleeping porch. That hanging in the door of the car she found a lady's purse and in the car was some whisky. That when

she took the car home she put the purse on the gate and shot it four times with a target rifle. That soon afterwards a car drove up near the gate and stopped. The lights were turned out and some person entered the gate. She commanded him to stop and when he did not do so she fired a rifle with the intent to scare him and did not intend to kill him. That she did not know it was Graves and thought it was some prowler. There are various details and circumstances not stated. There had been two previous trials of the case, each of which had resulted in a disagreement.

The first contention is that the judge at the beginning of the term in his general statement to the jury, in substance, asked the jury to convict defendants in order to avoid criticism of the courts. We have examined the record in this particular and are convinced the statement of the court does not sustain the contention. At the time the jury was impaneled, the court, in reference to granting excuses to jurors, stated, in substance, that excuses should not be offered to avoid jury service unless the reason was substantial. That criticism of courts was general because they did not function, and that this was in a measure due to the fact jurors often failed to do their full duty and requested the jurors, if possible, to serve on the panel and learn whether or not the criticism was just. It is true a juror generally desires to please the trial judge, and an intimation of the attitude of the judge in any particular case will have weight and may influence the verdict. For that reason, this court has frequently reversed cases where the trial judge intimated his opinion as to the merits of a case. However, a mere urging of members of the panel to serve on the jury panel unless they have some weighty reason for not serving does not

invade the province of the jury. This assignment is without merit.

It is urged that the verdict is contrary to the evidence. That as deceased came to her home near the hour of midnight under such circumstances as to cause defendant to apprehend immediate danger to herself or her children, that she was justified in firing the fatal shot. That defendant is a woman with two children, and the circumstances of the shooting are such as to arouse the sympathy of the jury and all connected with the case. This, no doubt, accounts for the fact that there had been a disagreement in two former trials. The jury must have been fully convinced the killing of this officer under the circumstances was inexcusable before they would have agreed to the verdict returned. It must have appeared to them that defendant was extremely jealous and stirred to anger by seeing her husband with another woman, and that the fatal shot was fired under the belief that the deceased was her husband. The case is one of fact, and the evidence fully warranted the jury in returning the verdict they did. This court is not at liberty to disturb their finding.

The only other complaint made is that the court admitted incompetent testimony and permitted the state too wide a latitude in cross-examination. The argument as to incompetent testimony is that photographs of the premises were admitted after there had been a change in the conditions in that at the time the photographs were taken the foliage was less than at the time of the homicide. Whatever change in circumstances was inconsequential and was fully understood by the jury. A rather wide range of cross-examination was permitted, a considerable part without objection, and, where valid objections were made, they were generally sustained. There may have been some slight error in a too liberal allowance of cross-examina-

tion, but certainly it could not have affected the verdict. Upon a consideration of the whole case, we are convinced defendant had a fair trial, free from prejudicial error.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.